UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

    Plaintiff,

v.

Obed Geovani Calderon-Cadenas (01),

    Defendant.

Criminal No. 11-282 (DWF/SER)

**REPORT AND RECOMMENDATION**

---

    Thomas M. Hollenhorst, Esq., United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415 for Plaintiff.

    Andrea K. George, Esq., Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Obed Geovani Calderon-Cadenas' (01) ("Calderon-Cadenas"): Motion to Suppress Eyewitness Identifications [Doc. No. 29]; Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 30]; and Motion to Suppress Statements, Admissions, and Answers [Doc. No. 31]. After receiving discovery from the Government, counsel for Calderon-Cadenas indicated at the hearing that he was no longer challenging the eyewitness identifications or statements. This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[1] For the reasons that follow, the Court recommends the motions be denied.

---

[1] The Court has addressed Defendant's non-dispositive motions in a separate Order.

I.   **BACKGROUND**

The Government filed an Indictment against Calderon-Cadenas on September 8, 2011, charging him with one count of Conspiracy to Distribute Methamphetamine and one count of Possession with Intent to Distribute Methamphetamine [Doc. No. 10]. This Court held a pre-trial motions hearing on October 12, 2011. No witnesses testified at the hearing. The Court received two exhibits into evidence: Government Ex. 1 - a search warrant, application, affidavit, receipt, inventory, and return for the premises at 1565 Evans Avenue, South St. Paul, MN 55075; and Government Ex. 2 - a search warrant, application, affidavit, receipt, inventory, and return for the premises of 137 Baker Street West, St. Paul, MN 55107, for Calderon-Cadenas' person, for the person of "Primo" an unidentified Hispanic male, and for five vehicles. This matter is set for trial before United States District Judge Donovan W. Frank on November 28, 2011.

II.   **FACTS**

On June 3, 2011, Sergeant Charles Kunkel ("Kunkel"), of the North Saint Paul Police Department and assigned to the Ramsey County Violent Crime Enforcement Team ("VCET"), applied for a search warrant for 1565 Evans Avenue, South St. Paul, MN 55075. (Gov. Ex. 1). Sergeant Kunkel noted that a Confidential Reliable Informant ("CRI") previously provided corroborated information to Kunkel and other VCET members. Kunkel met with the CRI, who provided information from an Unwitting Informant ("UI"). (*Id.*). The UI was a methamphetamine user who set up sales of methamphetamine for income. (*Id.*). The UI informed the CRI that the UI would be able to obtain a large amount of methamphetamine his supplier. (*Id.*). Using the UI and the CRI, Kunkel set up a controlled buy. (*Id.*).

Kunkel and other VCET members observed the CRI pick up the UI and proceed to 1565 Evans Avenue, South Saint Paul, MN 55075. (*Id.*). The UI left the CRI's vehicle and returned

soon after. (*Id.*). Over monitoring devices, officers heard the UI and the CRI seemed to argue over the amounts and delivery of the methamphetamine. (*Id.*). Because of safety concerns, Kunkel decided to end the operation and advised the CRI to leave and proceed to a pre-determined meet location, leaving the UI at Evans Street. (*Id.*). The CRI then advised Kunkel when the UI returned to the CRI's vehicle from 1565 Evans Avenue. (*Id.*). The UI showed the CRI a quantity of suspected methamphetamine and informed the CRI that more methamphetamine was available for sale at 1565 Evans Avenue. (*Id.*). The UI said his supplier was a "Straight Up Mexican Male," who spoke little English. (*Id.*).

After the aborted operation, two officers advised Kunkel that two other confidential informants recently purchased methamphetamine from 1565 Evans Avenue. (*Id.*). Both informants had been inside the residence and observed large amounts of purported methamphetamine. (*Id.*). Both informants described the residents of the house as an older Hispanic male who went by the name "Primo," and a younger Hispanic male who translated for "primo" and went by the name "Junior." (*Id.*).

Kunkel then met with one of the informants, the Confidential Arrested Informant ("CAI"). The CAI confirmed a recent purchase of methamphetamine from "Primo" at 1565 Evans Avenue and that "Junior" translated for "Primo." (*Id.*). The CAI stated that "Primo" and "Junior" were large methamphetamine dealers and s/he informant had observed numerous firearms in the residence. (*Id.*). Kunkel showed the CAI a photo of "Obed Giovani [sic] Calderon-Cadenas" and the CAI advised that it was a picture of "Junior." (*Id.*). A records check showed the owner of 1565 Evans Avenue lived out of state and that Calderon-Cadenas rented the property. (*Id.*). In the warrant application, Kunkel sought permission to seize: methamphetamine, drugs, and drug paraphernalia; documents and financial records related to

drug trafficking; papers and mail documenting the owners and/or renters of the residence; currency, precious metals, or other financial instruments; DVDs, CDs, or photographs showing evidence of narcotics trade; weapons and firearms; safes or lockboxes; cellular phones; address or telephone books; computers and electronic devices; and closed circuit cameras. (*Id.*). The warrant application sought permission for a nighttime search and unannounced entry. (*Id.*). Dakota County Judge Thomas Poch granted the warrant application. (*Id.*). Officers executed the warrant on June 10, 2011, and seized: firearms; a wallet; drug paraphernalia and packaging; methamphetamine; a laptop computer; cameras; and financial and residential records. (*Id.*).

On June 9, 2011, Detective Shawn Scovill ("Scovill"), from the Farmington Police Department and assigned to the Dakota County Drug Task Force, applied for a search warrant for: the residence of 137 Baker Street West, St. Paul, MN 55107; the person of Obed Geovani Calderon-Cadenas, a/k/a "Junior"; the person of "Primo," an unidentified Hispanic male, approximately 30 years old, 5'7", 130 pounds, with red tinted hair; a red 2003 Nissan Altima, MN license UEK607; a blue 1999 Ford Pickup MN license 2BG501; a blue 1999 Dodge Pickup MN license 2BG502; a grey VW Jetta MN license 946GPW; and a black 2000 Toyota Tacoma MN license 1AD118. (Gov.'s Ex. 2). Scovill noted that in May and June 2011, a Confidential Informant ("CI #1") provided information that two Mexican males known as "Primo" and "Junior" were selling large amounts of methamphetamine. (*Id.*). CI #1 stated that "Primo" was the main source for multiple pounds of methamphetamine, and "Junior" was involved in the sales and acted as an enforcer. (*Id.*). CI #1 provided phone numbers and descriptions for "Primo" and "Junior" and stated they stored methamphetamine at 137 Baker Street West, St. Paul, MN 55107 and sold the drugs at 1565 Evans Avenue. (*Id.*).

After checking the phone numbers provided by CI #1, Scovill learned of Kunkel's

4

investigation and repeated Kunkel's information leading to the search warrant for 1565 Evans Avenue. (*Id.*). Scovill showed CI #1 the photograph Kunkel previously showed the CAI, and CI #1 identified the individual as "Junior." (*Id.*). Scovill, the Dakota County Drug Taskforce, and agents of VCET, conducted surveillance on 1565 Evans Avenue and 137 Baker Street West on June 9, 2011, for approximately 12 hours. (*Id.*). The officers observed Calderon-Cadenas at 137 Baker Street West, along with a Hispanic male fitting "Primo's" description. (*Id.*). The officers watched Calderon-Cadenas and "Primo" travel between 1565 Evans Avenue and 137 Baker Street in the vehicles listed in the warrant application. (*Id.*). Scovill sought permission to seize: methamphetamine, drugs, and drug paraphernalia; records, receipts, documents, and financial records; papers and mail documenting the owners and/or renters of the residence, the owners of the vehicles, and/or the ownership of other seized items; money and other financial instruments showing profits from drug transactions; weapons and firearms; and containers used to store or conceal the other listed items. (*Id.*). Scovill sought permission for an unannounced nighttime search. (*Id.*). Ramsey County Judge Dale Lindman granted the warrant application. (*Id.*). Officers executed the warrant on June 10, 2011, and seized: methamphetamine; marijuana; drug paraphernalia including pipes, baggies, and drug packaging; notebooks with drug notes; letters and documents; firearms; cash; a safe; and cell phones. (*Id.*).

### III.   DISCUSSION

Defendant Calderon-Cadenas moves to suppress the evidence seized pursuant to the search warrants. Calderon-Cadenas asks this Court to conduct a "four corners" review of the search warrants, but fails to identify specific deficiencies in the warrant applications. After reviewing the warrants and the supporting affidavits, this Court concludes that probable cause

adequately supports the warrants, and that, even if probable cause did not support the warrants, the *Leon* good-faith exception would preclude suppression of the evidence.

### A. Probable Cause

The Fourth Amendment requires probable cause to support a search warrant. *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). When there is no testimony or exhibits presented to a magistrate judge regarding a search, the probable cause determination is made only on that information that is found within the four corners of the affidavit supporting the warrant. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008); *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006). "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *Hudspeth*, 525 F.3d at 674 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). A nexus between the items to be seized and criminal behavior must exist. *Warden v. Hayden*, 387 U.S. 294, 306-07 (1967)). Whether probable cause supports a search warrant requires an examination of the totality of the circumstances; the reviewing court should pay "great deference" to the issuing judge. *Stults*, 575 F.3d at 843 (quoting *United States v. Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009)).

A court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." *United States v. Carlson*,

697 F.2d 231, 238 (8th Cir. 1983); *see also United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). Likewise, in preparing affidavits in support of a warrant an officer may make reasonable inferences. *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). An officer's "averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, [can provide a] judge with a substantial basis for finding probable cause to search [the defendant's] residence." *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir. 1994), cited in *United States v. Walker*, 324 F.3d 1032, 1038 (8th Cir. 2003).

This Court concludes that probable cause supported the search warrants based on the information in the warrant applications, and Kunkel's and Scovill's Affidavits. The Affidavits describe multiple informants independently identifying "Primo" and "Junior" as involved in methamphetamine trafficking and connecting them to the residences searched. Two informants identified Calderon-Cadenas as "Junior" from a photograph. At least two informants purchased methamphetamine from 1565 Evans Avenue and observed large quantities of methamphetamine in the residence. Kunkel also described the aborted controlled buy in which the UI stated methamphetamine was available from 1565 Evans Avenue. One informant identified 137 Baker Street as a store house for the drugs. Scovill detailed the surveillance on June 9, 2011, showing Calderon-Cadenas and a man matching the description of "Primo" travel between 1565 Evans Avenue and 137 Baker Street in the vehicles the officers sought to search. Sergeant Kunkel averred that, in his training and experience, individuals involved in drug trafficking kept drugs, currency and other evidence of their trafficking activities in their residences. Both officers observed that evidence of drug trafficking would commonly be found in the drug traffickers'

7

vehicles. Probable cause existed to believe that evidence of drug trafficking activities would be found in the two residences, on the persons of Calderon-Cadenas and "Primo," and in the vehicles the officers observed Calderon-Cadenas and Primo travel in between the residences. The warrants also properly and sufficiently identified the location of the searches and the items to be seized. The motion to suppress should be denied.

### B. Leon Good-Faith Exception

The *Leon* good-faith exception modifies the rule that courts should exclude evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 923 (1984). Under *Leon*, "evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007) (both citing *Leon*, 468 U.S. at 923). If an officer relies on a warrant for which the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," then the *Leon* exception is inapplicable. *Leon*, 468 U.S. at 923; *Ross*, 487 F.3d at 1122.

When an affidavit fails to establish a nexus between a residence and contraband, it still would not be "entirely unreasonable" for the executing officer "to believe that such an inference was permissible." *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003); *see also Proell*, 485 F.3d at 432. Courts must apply the good-faith exception "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon*, 468 U.S. at 920. Ordinarily, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is

technically sufficient . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921.

Even if probable cause did not support the search warrants, the *Leon* good-faith exception applies. The warrants were not "so lacking in indicia of probable cause" that the executing officers' reliance on the warrants would be unreasonable. The affidavits provided significant details connecting Calderon-Cadenas and "Primo" to drug trafficking activities at the two residences and the use of the vehicles in those drug trafficking activities. It was objectively reasonable for the officers to rely on the validity of the search warrants and, therefore, the Court recommends that the motion to suppress be denied.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Calderon-Cadenas' Motion to Suppress Eyewitness Identifications [Doc. No. 29] be **DENIED as moot**;

2. Defendant Calderon-Cadenas' Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 30] be **DENIED**; and

3. Defendant Calderon-Cadenas' Motion to Suppress Statements, Admissions, and Answers [Doc. No. 31] be **DENIED as moot**.

Dated: October 26, 2011                         s/ Steven E. Rau
                                                STEVEN E. RAU
                                                United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **November 10, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.